UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

22 FRANKLIN, LLC and
MACCO CONSTRUCTION CORPORATION,

                    Plaintiffs,

    v.

BOSTON WATER AND SEWER COMMISSION,
JOHN SULLIVAN, and JOHN O'HALLORAN,

                    Defendants.

Civ. Action No. _____

## **COMPLAINT**

1.      This action arises out of the acts and conduct of Defendants, Boston Water and Sewer Commission, John Sullivan, Chief Engineer of the Boston Water and Sewer Commission, and John O'Halloran, Construction Manager of the Boston Water and Sewer Commission, each of whom participated in the deprivation of the Plaintiffs' property and constitutional rights to both procedural and substantive due process with respect to a proposed subdivision and development project located in Dorchester, Massachusetts. The Defendants' collective abuses of power and authority, which have effectively blocked the Plaintiffs' development project through various forms of delay tactics and coercive behavior, violated the Plaintiffs' constitutional rights to the use and possession of their property and their right to access municipal water systems, among others, which have caused and are causing the Plaintiffs continued damages.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction over the parties and this action pursuant to 28 U.S.C. § 1331, 1343, and 1367, and 42 U.S.C. § 1983.

3.      Venue is proper in the United States District Court for the District of Massachusetts pursuant to 28 U.S.C. § 1391(b) because the defendants reside in this judicial district, the events or omissions giving rise to the claim occurred in this judicial district, and the property that is the subject of the action is situated in this judicial district.

## PARTIES

4.      Plaintiff, 22 Franklin, LLC (the "Company") is a limited liability company duly organized under the laws of the Commonwealth of Massachusetts, with its principal place of business located at 1089 Commonwealth Avenue, #222, Boston, Massachusetts.  At all times relevant hereto, the Company has owned certain real property in Massachusetts, known and numbered as 22 Franklin Street, Boston (Dorchester), Massachusetts (the "Property"), pursuant to a deed duly recorded with the Suffolk County Registry of Deeds, at Book 49358, Page 1, on or about April 13, 2012.

5.      Plaintiff, MACCO Construction Corporation (the "Contractor", collectively with the Company the "Plaintiffs") is a domestic corporation duly organized under the laws of the Commonwealth of Massachusetts, with its principal place of business located at 80 Hacketts Pond Drive, Hanover, Massachusetts, and has performed the general contracting for the Development Project, as hereunder defined.

6.      Defendant, Boston Water and Sewer Commission ("BWSC" or the "Commission"), is a business entity licensed and authorized to do business in the Commonwealth of Massachusetts, with its principal place of business located at 980 Harrison

Avenue, Boston, Massachusetts, and at all times material hereto was engaged in the business of, *inter alia*, providing residential and commercial potable water and sewer services, including but not limited to the installation, maintenance, and repair of water distribution pipes and sewer lines in and for the City of Boston.  The Commission is also a public employer within the meaning of Massachusetts General Laws ("G.L.") c. 258, § 1.

7.     Defendant John Sullivan is, and at all times relevant hereto has been, the Chief Engineer at the BWSC with authority over the issuance of certain permits falling within the BWSC's regulatory purview. Mr. Sullivan is a resident of the Commonwealth of Massachusetts. His actions as alleged in this Complaint were taken under color of state law, and he is sued in his individual as well as his official capacities.

8.     Defendant John O'Halloran is, and at all times relevant hereto has been, a Construction Manager at the BWSC. Mr. O'Halloran is a resident of the Commonwealth of Massachusetts. His actions as alleged in this Complaint were taken under color of state law, and he is sued in his individual as well as his official capacities.

## FACTS COMMON TO ALL COUNTS

9.     On or about April 13, 2012, the Company purchased the subject Property in good faith in in reliance on applicable zoning, building, permitting, and other state and local laws and regulations applicable to the use of one's property.

10.     The Property is comprised of approximately 7,082 square feet of land and located in a Commercial Zone pursuant to the City of Boston's Zoning Code.

11.     The Company purchased the Property for the anticipated purpose of constructing a small residential development thereon, consisting of two separate townhouses, each with two

residential units, for a total of four residential units on the Property (the "Development Project"). The Contractor has at all times acted as the general contractor for the Development Project.

12.     In connection with the Development Project, on or about October 11, 2012, the Plaintiffs applied for ten (10) variances. On or about December 10, 2013, Plaintiffs received approval for all ten (10) variances from the City of Boston Zoning Board of Appeals, having received unanimous consent therefore.

13.     Upon receiving the requisite variances the Plaintiffs applied for building permits necessary to the Development Project, which were received on or about August 4, 2016, as Building Permit Nos. ERT219504 and ERT191299 (together, the "Building Permits").

14.     As part of the permitting process the Plaintiffs also applied for BWSC review and approval of the Development Project on or about December 23, 2014.

15.     During that approval process, the BWSC noted that it had previously approved the installation of a twelve (12") inch sewer pipe (the "Sewer Pipe") on the Property, in a location that appeared, based upon plans in the possession of the BWSC, to run underneath the proposed location of the foundation of one of the two residential townhouses included in the Development Project.

16.     At that time, the Plaintiffs requested a copy of the BWSC's file relating to the Sewer Pipe's original approval and installation. No such file was provided to the Plaintiffs.

17.     At the request of the BWSC, and in consideration of the BWSC's promise to approve the Development Project, the Plaintiffs agreed to relocate the Sewer Pipe. The BWSC did not specify any time frame for when the Sewer Pipe needed to be removed or relocated or at what stage of the Development Project.

18.     The BWSC's concern regarding the location of the Sewer Pipe was the BWSC's only objection communicated to Plaintiffs regarding the Development Project and it was founded entirely on BWSC records that were roughly 10-12 years old at the time. Nonetheless, Plaintiffs revised their Development Project plan to include the relocation of the Sewer Pipe and submitted that revised plan to the BWSC for approval on or about February 3, 2015.

19.     The estimated cost associated with the relocation of the Sewer Pipe was approximately $40,000.00.

20.     Upon its review of the revised plan, and despite the Plaintiffs having complied with the BWSC's initial and only requested modification, the BWSC imposed additional requirements that it asserted were to be completed by Plaintiffs prior to the BWSC's issuance of final plan approval.

21.     The first such additional requirement was for the Plaintiffs to locate the Sewer Pipe and provide the BWSC with a video recording of the Sewer Pipe so that the BWSC could view the Sewer Pipe and ascertain the approximate location of the same.

22.     The Plaintiffs complied with the BWSC's request, excavated the earth around the Sewer Pipe, and provided the BWSC with a black and white video recording of the Sewer Pipe.

23.     Despite having failed to prescribe the format for the video recording, the BWSC refused to accept the black and white video recording initially provided by Plaintiffs, and demanded that the video be re-recorded in color.

24.     The Plaintiffs again complied and re-recorded the Sewer Pipe using full color video, at additional expense, and provided that video to the BWSC. The video showed the size, location, quality and construction of the Sewer Pipe.

25.     The BWSC, upon review of the video, alleged that the Sewer Pipe was not up to code and provided the Plaintiffs with a new set of requirements upon which BWSC approval for the Development Project would be contingent, all of which would have to be performed by the Plaintiffs and at their expense, including, *inter alia*:

    a.   removal of the existing 12" Sewer Pipe;
    b.   installation of a new 15" sewer pipe to replace the 12" Sewer Pipe;
    c.   transfer of ownership of the 15" sewer pipe from the Company to the BWSC; and
    d.   the grant of an easement from the Company to the BWSC to allow the BWSC unfettered access to the new 15" sewer pipe.

26.     As a consequence of the BWSC's new requirements the Plaintiffs were required to submit, once again, a revised plan to the BWSC incorporating the changes to the Sewer Pipe and related conditions. Once again, the BWSC established no specific deadline for these new requirements. The BWSC stated only that the pipe was to be removed and up-graded prior to the completion of the Development Project.

27.     During the back-and-forth between the Plaintiffs and BWSC, the BWSC requested that the Company grant an easement for the repair and maintenance of the Sewer Pipe to BWSC. The BWSC explicitly conditioned its approval of the Development Project upon the grant of such an easement.  The Company acquiesced because the BWSC made clear that without the easement, no final approval would issue.

28.     The executed easement agreement was recorded with the Suffolk County Registry of Deeds, at Book 55460, Page 22, on or about December 15, 2015 (the "Easement Agreement"). The terms of the Easement Agreement state that the BWSC "owns, controls and maintains an existing twelve (12") diameter sanitary sewer line". The Easement Agreement further requires that the Company comply with the site plan and within two (2) years after the completion of the Development Project, transfer ownership of the Sewer Pipe to the BWSC. This two (2) year

deadline is the only date certain contained in the Easement Agreement or any other communication between the BWSC and the Plaintiffs.

29.     In addition to the Easement Agreement, the BWSC imposed additional unnecessary, onerous and expensive requirements for approval of said site plan, including but not limited to the installation of steel pilings adjacent to the new 15" sewer pipe, again at the Company's expense, which were to remain in place after completion of the Development Project, at an estimated increased cost of $85,000.00.

30.     In light of the BWSC's continuous imposition of new conditions upon the Plaintiffs, the Plaintiffs' engineers determined that if Plaintiffs adjusted the parameters of the proposed townhouses (reducing square footage and thus market value), Plaintiffs would be able to accommodate the existing location of the Sewer Pipe, continue to build under the authority of their initially obtained Building Permits, and move the Sewer Pipe subsequent to the completion of the construction.

31.     On or about March 4, 2016, the BWSC reviewed and approved the Company's revised site plan, specifically Site Plan No. 14480 (the "Site Plan").

32.     Subsequent to the recording of the Easement Agreement, and the BWSC's approval of the Site Plan, the BWSC still refused to release the approved Site Plan and to issue the related General Services Application ("GSA") permit to the Company.

33.     Once the Company resumed construction and excavation, it quickly discovered that the full length of Sewer Pipe was not in the location indicated by the BWSC and specified and recorded in the Easement Agreement. In fact, the Sewer Pipe was approximately three (3) feet outside of the proposed foundation of the nearest townhouse, it was not under the foundation as the BWSC had asserted. The Sewer Pipe therefore would not have been negatively impacted

by the Development Project as originally proposed. (Notably, there is no specific regulation prohibiting new construction within a specified distance from an existing sewer pipe).

34.     As the Plaintiffs continued work on the Development Project in compliance with their Building Permits, BWSC construction manager, John O'Halloran, repeatedly appeared at the Property, harassed Company employees and construction personnel, disrupted work, and demanded that the Development Project be halted, all under color of his official powers as construction manager of the BWSC, despite lacking any authority to make such demands.

35.     Mr. O'Halloran, during one of his many interruptions at the worksite, viewed the exposed Sewer Pipe and concluded that the Sewer Pipe was not straight, the schedules were improper and the fittings were glued when they should have included rubber gaskets. Mr. O'Halloran made these assertions despite the BWSC's prior notice of the Sewer Pipe's specifications obtained through the previously mentioned video recordings. Nonetheless, Mr. O'Halloran demanded that work on the Project stop and the Sewer Pipe be replaced immediately.

36.     Ironically, while making the aforementioned unreasonable demands, Mr. O'Halloran recalled to Plaintiffs that the Sewer Pipe had originally been installed approximately ten to twelve years prior, by J.F. White Contracting Company, and that Mr. O'Halloran was the inspector who oversaw and approved the Sewer Pipe's original installation.

37.     Nonetheless, Plaintiffs complied with Mr. O'Halloran's unauthorized requests to cease work and requested the advice of their engineer regarding the structural impact of their Development Project on the current location of the Sewer Pipe.

38.     The Plaintiffs' engineer, Mr. George Horowitz, stated that there was no regulation requiring that the placement of the Sewer Pipe be a specific distance from a building foundation but recommended that the Plaintiffs dig-up their footings and dig down deeper so that the

foundation would be at the same grade as the Sewer Pipe. The Plaintiffs complied with this recommendation.

39.     During the additional excavation required to again locate the Sewer Pipe, the Plaintiffs were forced to excavate below the water table where the Sewer Pipe was located, which caused the site to flood with water. Given the time of year, in mid-February, the flooded site immediately froze. The Plaintiffs were forced to spend additional time and money to bring heaters and pumps to the Property to clear it of ice and water and complete the foundation.

40.     Work on the Development Project remained at a standstill as the Plaintiffs awaited further instruction from Mr. Sullivan. The Plaintiffs made repeated attempts to contact Mr. Sullivan for clarification and to have a discussion about the remedial measures taken by the Plaintiffs, which the Plaintiffs believed alleviated many of the BWSC's concerns.

41.     Mr. Sullivan refused to have a productive conversation with the Plaintiffs or to allow Plaintiffs to present their plans to the BWSC and merely asserted that the Sewer Pipe needed to be removed and up-graded before the BWSC would release the GSA permit and/or allow water and sewer connections at the Property.

42.     Subsequently, the Plaintiffs were finally able to meet with the BWSC to discuss their remedial measures, including the re-grading of the building foundations, and Plaintiffs provided the BWSC with photographic evidence thereof.

43.     The BWSC arbitrarily refused to accept the photographic evidence as proof and required the Plaintiffs, at their additional expense, to excavate and dig down thirteen (13') feet so that BWSC could see for themselves that the re-grading occurred. There was no further response from the BWSC on this matter.

44.     Frustrated by the BWSC's stonewalling of the Development Project, the BWSC's continual invention and imposition of new, unnecessary and unreasonable conditions and requirements not previously discussed, and the BWSC's refusal to have a meaningful discussion about the Project, the Plaintiffs reached out to BWSC Commissioner Henry Vitale to discuss the situation. As a result of this phone call, Mr. Vitale had John Sullivan call the Plaintiffs.

45.     During the call between Mr. Sullivan and the Plaintiffs, it was clear to Plaintiffs that Mr. Sullivan resented that Plaintiffs had contacted Mr. Vitale in an attempt to resolve the impasse between Plaintiffs and the BWSC. Mr. Sullivan refused to consider any of the Plaintiffs' reasonable proposals and reiterated that the Sewer Pipe needed to be removed and upgraded due to Mr. O'Halloran's report of the three alleged violations set forth in Paragraph 35. The Plaintiffs stated to Mr. Sullivan that it was improper for Mr. O'Halloran, the inspector who approved the original installation of the Sewer Pipe, to assert that the Sewer Pipe was in violation of any applicable requirements.

46.     Approximately six (6) months after the call from Mr. Sullivan, the Plaintiffs returned to the BWSC offices to obtain the approved Site Plan. The desk clerk refused to release either the approved Site Plan or the related GSA permit, stating that although the Site Plan was stamped with approval it would not be released until such time as the Plaintiffs complied with the BWSC's demand that the Sewer Pipe be relocated and up-graded.

47.     In addition to refusing to release the approved Site Plan and GSA permit, the BWSC arbitrarily refused to provide water and sewer access to the Development Project citing the Plaintiffs' failure to comply with the requirements of the Easement Agreement, despite there being no compliance deadlines imposed by the Easement Agreement. As a result, the Plaintiffs had to ship water to the site to test their plumbing and the like, at additional cost and expense.

48.     In or around April 2019, Plaintiffs once again called Mr. Vitale to explain that they remained at a standstill with the BWSC and requested a face-to-face meeting with Mr. Sullivan to discuss the Development Project and the Sewer Pipe.

49.     A meeting was held shortly thereafter at which the Plaintiffs and Mr. Sullivan were present. Plaintiffs explained to the BWSC that ample precautions had been taken to ensure protection of the Sewer Pipe, the Sewer Pipe was not under the foundation (as was the BWSC's original assumption), and that the cost to move and up-grade the Sewer Pipe pursuant to the new, and constantly changing, requirements imposed by the BWSC would cost the Plaintiffs roughly $150,000.00. Mr. Sullivan refused to consider the Plaintiffs' presentation and refused to modify the conditions imposed by the BWSC for release of the approved Site Plan and related GSA permit. The BWSC further refused to allow for the hookup of water and sewer access at the Property. Mr. Sullivan's refusals were arbitrary and capricious and were the product of animus towards the Plaintiffs, apparently for seeking assistance from Commissioner Vitale.

50.     As recent as September 2019, the Plaintiffs appeared at the BWSC once again to request the file from the original installation of the Sewer Pipe, which installation was approved by Mr. O'Halloran. Mr. Frank McLaughlin stated that the original plans, file and jacket were likely on Mr. O'Halloran's desk and thus could not be reviewed by the Plaintiffs.

51.     The Development Project will soon reach a point where the Plaintiffs must cease all work until resolution of the Sewer Pipe issue. The constant re-negotiation, and the increasing and onerous requirements on the Plaintiffs have ultimately set the Plaintiffs back approximately four (4) years from their intended completion date.

52.     The BWSC never sent any formal written notice to Plaintiffs denying any of Plaintiffs' requests for Site Plan approval, denying Plaintiffs' request for release of the approved

Site Plan, denying Plaintiffs' requests for issuance of the GSA permit, and/or denying Plaintiffs' request for the Property to be connected to municipal water and sewer systems.

53.     The BWSC never formally and in writing directed the Plaintiffs to take clearly defined remedial action in order to allow the Development Project to proceed.

54.     The BWSC failed to follow its own policies and procedures throughout its dealings with the Plaintiffs by, *inter alia*, failing to issue such formal written notices with clear instructions to Plaintiffs regarding the Development Project.

55.     Acting under color of state law, the BWSC and Messiers Sullivan and O'Halloran, exceeded and acted outside the scope of their respective authority, and acted truly egregiously and with animus against Plaintiffs by, *inter alia*, failing to follow applicable BWSC procedures, failing to fairly enforce applicable regulations, failing to provide written notices with clear instructions to Plaintiffs regarding the Development Project, failing to notify the Plaintiffs of any available administrative remedies, holding Plaintiffs *approved* Site Plan hostage until Plaintiffs followed each of their unreasonable demands, and denying Plaintiffs and/or failing to inform Plaintiffs of any access to clear pre-deprivation process before depriving Plaintiffs of the use and enjoyment of the Property and the Development Project.

56.     The BWSC's actions, and the actions and statements of Messiers Sullivan and O'Halloran, clearly rendered futile any administrative remedies otherwise available to Plaintiffs.

57.     Plaintiffs have been denied due process under the United States Constitution by having their rights to exercise and enjoy certain privileges and immunities to own and develop real property free from intentional misconduct, abuse of power and the imposition of arbitrary and irrational conditions on the development of such real property.

58.     Defendants have engaged arbitrary methods amounting to a gross abuse of power motivated by malicious and/or bad faith intent to prevent the Development Project from moving forward.

59.     Plaintiffs were, and are, not being treated equally by the Defendants, in relation to those similarly situated, and were denied equal protection by the BWSC in the Development Project approval and permitting processes and in the BWSC's refusals to connect municipal water and sewer systems to the Property.

60.     Defendants' constant imposition of additional terms and conditions on the Plaintiffs' site and permit approvals were arbitrary and a gross abuse of the BWSC's power.

## COUNT I
### Violations of 42 U.S.C. § 1983 and the Fifth and Fourteenth Amendments of the United States Constitution – Procedural & Substantive Due Process

61.     Plaintiffs repeat, re-allege and incorporate fully herein all the preceding allegations of this Complaint.

62.     Defendants, under color of law, have violated the Plaintiffs' constitutionally protected property rights as secured under the Fifth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983.

63.     By imposing ever-changing conditions on Plaintiffs' ability to complete the Development Project and receive the requisite permits and approvals from the BWSC, and by otherwise manipulating and abusing their authority to block the Development Project from being completed, Defendants have deprived the Company of the enjoyment of its constitutionally protected interests in the Development Project and the Property without due process of law.

64.     Defendants have intentionally and wrongfully targeted Plaintiffs for adverse treatment relating to their protected interests in the Development Project and in the Property.

65.     Defendants' adverse treatment of the Plaintiffs was arbitrary and irrational, without authority under the law, and motivated by the malicious and bad faith intent to block the Project and injure the Plaintiffs.

66.     Defendants' intentional misconduct has violated Plaintiffs' substantive due process right not to be deprived of the use its property except by laws, regulations, or government actions that are rationally related to a legitimate governmental interest.

67.     Plaintiffs have suffered injuries as a result of Defendants' wrongful acts and omissions for which the Defendants are liable under 42 U.S.C. § 1983 in an amount to be determined at trial.

## COUNT II
### Unlawful Denial of Public Right to Access Municipal Water System

68.     Plaintiffs repeat, re-allege and incorporate fully herein all the preceding allegations of this Complaint.

69.     Plaintiffs are entitled to have reasonable access to the municipal water system, including the ability to connect to municipal water systems to receive water at the Property.

70.     Plaintiffs' request for access to the municipal water system does not burden the City or the BWSC in any way, nor does it violate the interests of the public.

71.     Defendants have improperly denied Plaintiffs access to Boston's municipal water system by refusing to connect ready systems at the Property to City water systems.

72.     As described in greater detail above, and as a result of the Defendants' denial of Plaintiffs' access to the municipal water systems, the Plaintiffs have been forced to regularly truck water onto the Property at significant cost.

73.     Plaintiffs have suffered, and continue to suffer economic harm as a result of the Defendants' refusal to allow Plaintiffs reasonable access to the City of Boston's municipal water systems.

## COUNT III
### Declaratory Judgment Pursuant to G.L. c. 231A

74.     Plaintiffs repeat, re-allege and incorporate fully herein all the preceding allegations of this Complaint.

75.     An actual controversy has arisen and now exists between the Plaintiffs and the Defendants with respect to the Defendants' interference with the Plaintiffs' development of the Property and Defendants' imposition of ever-changing conditions upon the Plaintiffs' ability to complete the Development Project.

76.     The Plaintiffs request that the Court declare that the Defendants' actions have been ultra vires, arbitrary, capricious, an abuse of discretion and unsupported by either the BWSC's statutory authority or any factual circumstances relating to the Property.  Further, the Plaintiffs request that the Court declare the Plaintiffs' full legal rights and interest in completing the Development Project.

77.     The declaratory judgment sought by the Plaintiffs will serve a useful purpose in clarifying and settling the instant dispute and will afford relief from the uncertainty, insecurity and controversy among the parties described above.

## COUNT IV
### Rescission of the Easement Agreement

78.     Plaintiffs repeat, re-allege and incorporate fully herein all the preceding allegations of this Complaint.

79. Plaintiffs entered into the Easement Agreement based solely upon the Defendants' representation as to the physical location of the Sewer Pipe.

80. Upon excavation of said Sewer Pipe, it was determined that the location was not as represented by the Defendants.

81. Defendants either mispresented the location of the Sewer Pipe intentionally, negligently, or by accident or mistake.

82. Plaintiffs would not have entered into the Easement Agreement but for the Defendants' misrepresentation.  As a direct, proximate, and foreseeable result of the Defendants' misrepresentation, Plaintiffs relied upon Defendants' assertions of fact, entered into the Easement Agreement, and have therefore been wrongfully deprived of the full and exclusive use of their rightful Property.

83. Plaintiffs are entitled to an order of this Court rescinding the Easement Agreement due either to the material misrepresentation and/or mutual mistake of fact upon which said Agreement was predicated.

## **REQUESTED RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

1. Enter judgment in favor of Plaintiffs and against Defendants on Count I, for the Defendants' violations of 42 U.S.C. § 1983 and the Fifth and Fourteenth Amendments of the United States Constitution which protect Plaintiffs' rights to procedural and substantive due process;

2. Enter judgment in favor of Plaintiffs and against Defendants on Count II, for the Defendants' unlawful denial of Plaintiffs' right to access Boston's municipal water system;

3. Enter judgment in favor of Plaintiffs and against Defendants on Count III, declaring the Defendants actions described hereinabove ultra vires, arbitrary,

capricious, an abuse of discretion and unsupported by either the BWSC's statutory authority or any factual circumstances relating to the Property;

4.      Enter judgment in favor of Plaintiffs and against Defendants on Count IV, rescinding the Easement Agreement entered into by Plaintiffs in reliance on the Defendants' material misrepresentations and/or mistakes of fact;

5.      Award Plaintiffs money damages, plus pre-judgment and post-judgment interest on all Counts of this Complaint;

6.      Award Plaintiffs the costs of this action, including, without limitation, reasonable attorneys' fees and costs; and

7.      Grant such other and further relief as this Court deems just and proper.


## JURY DEMAND

Plaintiffs hereby request a trial by jury on all issues so triable.


DATED: August 21, 2020                    Respectfully submitted,

                                          22 FRANKLIN STREET, LLC AND
                                          MACCO CONSTRUCTION CORPORATION

                                          By their attorneys,

                                          /s/      *Jess D. Oyer*
                                          Charles R. Bennett, Jr. (BBO# 037380)
                                          CBennett@murphyking.com
                                          Jess D. Oyer (BBO# 683242)
                                          Joyer@murphyking.com
                                          MURPHY & KING, P.C.
                                          One Beacon Street, 21st Floor
                                          Boston, MA 02108
                                          Tel.: (617) 423-0400
                                          Fax: (617) 423-0498